HUNT, Receiver, Appellant, vs. WHEWELL, Respondent.

*April 19—May 10, 1904.*

*Interstate comity: Insolvent banks: Stockholders' liability: Enforcement against nonresidents: Statutes.*

1. *Finney v. Guy,* 106 Wis. 256, and *Eau Claire Nat. Bank v. Benson,* 106 Wis. 624, as to enforcement in the courts of this state of the statutory liability of stockholders of a bank to its creditors under the laws of Minnesota, followed. *Parker v. Stoughton M. Co.* 91 Wis. 174, distinguished.

2. A statute of Minnesota (ch. 272, Laws of Minn. 1899) to the effect that the court of that state in which a receiver is appointed for an insolvent bank may, in a summary proceeding to which a nonresident stockholder is not a party, fix the amount for which he shall respond upon his statutory liability, and the time when and the person to whom the same must be paid, and that such determination shall be conclusive upon the stockholder as to all questions involved, will not be given such force by the courts in this state as to deprive a stockholder, resident here, from whom the receiver seeks to recover in our courts an amount so fixed, of his right to litigate all questions respecting the enforcibility of his said statutory liability.

APPEAL from an order of the circuit court for St. Croix county: E. W. HELMS, Circuit Judge.  *Affirmed.*

The complaint contained the following, among other things not necessary to mention:

The Allemannia Bank is a banking corporation duly organized under the laws of the state of Minnesota. Its place of business is St. Paul, in such state. It became insolvent about June 1, 1900, and such proceedings were duly taken by action, pursuant to chapter 145, p. 298, of the general laws of such state for 1895 and the acts amendatory thereof, that June 8, 1900, in the district court for Ramsay county, in such state, plaintiff was appointed receiver of its assets, with the powers and duties belonging to the position under said law of 1895, and under chapter 76 of the General Statutes of 1895 of such state, and the practice in equity. He duly qualified as such receiver and entered upon the duties of his office.

Subsequent to the above-mentioned occurrences said district court entered an order in such action for creditors of the insolvent to exhibit their claims to such court, and such proceedings were duly taken in respect thereto that such claims were presented and duly allowed, exceeding $75,000.

The value of the assets of the insolvent coming to the hands of the receiver does not exceed $20,000, and the greater part of the stockholders are insolvent.

The allowed claims and the costs of the receivership will exceed the resources available to pay the same, including the liabilities of the stockholders.

By sec. 21, tit. 2, ch. 33, Gen. Stats. Minn. 1878, it is provided that all stockholders of such a bank as the one in question shall be individually liable in an amount equal to double the amount of stock owned by them, for all the debts of such bank, which liability shall continue for one year after any transfer or sale of stock by any stockholder.

By ch. 272, Laws of Minnesota for 1899, it is provided

that in a receivership proceeding such as the one herein mentioned, upon the petition of the receiver to the court appointing him, it shall by order set a time for hearing and direct such notice of hearing to be given by publication or otherwise as the court may deem proper. At such hearing, if it shall appear upon such proofs, by affidavit or otherwise, as may be offered, that the assets of the corporation will be insufficient to pay in full its indebtedness, and that it is necessary or proper to enforce the stockholders' liabilities, the court shall levy an assessment upon all parties liable as stockholders for such amount on account of each share as the court in its discretion shall deem proper, taking into account the probable net amount that can be realized from such levy, and shall direct the payment of the amount so assessed to the receiver within a specified time, and further direct the receiver to collect the amount so assessed against each share of said stock from the parties liable, and authorize said receiver, if necessary, to prosecute actions against each and every party failing to pay the amount for which he is liable according to such assessment, wherever such party may be found, within or without the state. Such order shall be conclusive upon all persons assessed as regards all questions concerning the same, regardless of whether they shall have appeared upon the hearing or were there represented or had notice thereof. If after payment of all charges upon the receivership fund there shall remain a surplus of money or property in the hands of the receiver, the sum under the direction of the court shall be distributed among the stockholders who shall have paid their assessment. Any stockholder who shall have paid the assessment shall be entitled to enforce contribution from stockholders who have not paid such assessment, in such manner and to such extent as may be just and equitable.

The supreme court of Minnesota, in *Straw & E. Mfg. Co. v. Kilbourne B. & S. Co.* 80 Minn. 125, 83 N. W. 36, held that the law of 1899 aforesaid was constitutional, and that

the jurisdiction of the court, having charge of the receivership proceeding, over the insolvent corporation includes jurisdiction of all its stockholders, whether nonresident or not, so as to conclude them respecting every question involving their liability to pay the amount of the assessment to the receiver ordered to be paid by them respectively; that the act is a mere practice provision not involving any impairment or change of stockholders' rights.

During the existence of the said insolvent corporation it has been the law of Minnesota as declared by its highest court (specifying decisions), that a receiver appointed to collect the liabilities of resident stockholders of an insolvent corporation has power to enforce the liabilities of nonresident stockholders anywhere they may be found; that the liability of stockholders is several, and that a judgment in a Minnesota court against part of the stockholders does not relieve others; that such action in a Minnesota court is not exclusive; that if stockholders are not sued in the Minnesota court in which the principal action is instituted to wind up the insolvent corporation, because the court cannot obtain jurisdiction of them, they may be sued in an ancillary action within or without the state and their liabilities thereby enforced, and that the order or judgment in such principal action determining the amount of the corporate debts is binding on the stockholders whether parties to the action or not; that a stockholder in a corporation has all the responsibilities created by the law of the state under which the corporation exists regardless of his place of residence, and those responsibilities, as regards remedies for the enforcement thereof, may be changed at the will of the legislature of such state; that in order to enforce the extraordinary liability of a nonresident stockholder it is not necessary to first procure a judgment against the corporation in its home state; that such liability is the creditors' only and may be enforced for their benefit regardless of any judgment against the corporation.

January 2, 1901, plaintiff as receiver aforesaid, duly filed his petition under said law of 1899, and thereafter such proceedings were duly taken pursuant to such law that an assessment upon the capital stock of the corporation to the par value thereof was made, and each stockholder was directed to pay the amount assessed against him to said receiver within twenty-one days after the date of the order, and the latter was directed to enforce collection of all liabilities thereby created, not paid as directed. The assessment was made April 3, 1901. It provided for notice to all parties liable and a time limit for the payment of the same, which notice was duly given. October 2, 1892, defendant became and thereafter continued to be a stockholder of the corporation to the amount of $900 par value of the stock, and by reason of the facts alleged became liable to pay to the receiver the sum of $900, which she has neglected and refused to do.

Upon the facts stated and others not necessary to mention judgment was asked for $900 with interest and costs.

The defendant demurred to the complaint, first, for want of jurisdiction of the court over the subject matter; second, for want of legal capacity to sue; third, for defect of parties defendant; fourth, for insufficiency; fifth, because the action was not commenced within the time limited by law. The demurrer was sustained, and plaintiff appealed.

For the appellant there was a brief by *James E. Trask* and *C. T. Bundy,* and oral argument by *Mr. Trask* and *Mr. C. A. Severance.*

*H. C. Baker* and *Spencer Haven,* for the respondent.

MARSHALL, J. This appeal is ruled in favor of respondent by *Finney v. Guy,* 106 Wis. 256, 82 N. W. 595, and *Eau Claire Nat. Bank v. Benson,* 106 Wis. 624, 82 N. W. 604, particularly the former. Every vital question involved here was so thoroughly discussed and the policy of this state in respect thereto so plainly declared in *Finney v. Guy,* and

that policy so unqualifiedly sustained by the federal supreme court in the same case in 189 U. S. 335, 23 Sup. Ct. 558, that it seems no useful purpose would be served by going over the matter again.

Our attention is called to *Parker v. Stoughton M. Co.* 91 Wis. 174, 64 N. W. 751, as analogous to the case before us. To our minds the two cases are widely different. The claim in the former was upon an assessment note belonging to the receiver as the representative of the corporation. It was a corporate asset strictly so called. The liability did not depend upon any statute, nor did the remedy to enforce it. Here the liability is contractual, to be sure, but it is so only by force of the statute. The liability is statutory, the remedy to enforce it is statutory, and appellant's title is a creature of the statute. The former is strictly transitory; the latter, as regards whether an absolute right or not, is confined to the state of its creation. These views, thus expressed, have the distinct support of the supreme court of the United States in *Hale v. Allinson,* 188 U. S. 56, 67, 23 Sup. Ct. 244, where it is plainly indicated that in applying decisions to the two classes of claims, those treating of one class should not be confused with those treating of the other. True, the Massachusetts court, in *Howarth v. Lombard,* 175 Mass. 570, 56 N. E. 888, held, in effect, that since both classes of liabilities are to be worked out as parts of a common trust fund for the benefit of creditors they should be treated alike as regards the facilities furnished by courts of a state foreign to that of the debtor corporation for the enforcement thereof; that no difference should be made between common-law and statutory liabilities. However, it should be noted that such court plainly there recognized that there is this important distinction between mere statutory rights and others; that the enforcibility of the latter in a state foreign to that of their creation depends upon the law of comity, and that in such field each state is free to establish its own policy unhampered

by any outside law, state or national, as indicated in *Finney v. Guy,* 189 U. S. 335, 345, 23 Sup. Ct. 558.

"If," said the Massachusetts court, "the statute creating the right is against the policy of the law of the neighboring state, that is a sufficient reason for refusing to enforce the right there. In the neighboring state, in such a case, it will not be considered a right. If the enforcement of the statutory right in a neighboring state in the manner proposed will work injustice to its citizens, considerations of comity do not require the recognition of it by the courts of that state."

That is the precise ground upon which, in the main, it was held in *Finney v. Guy* that our courts should not be used to coerce our citizens to perform Minnesota obligations in the manner attempted, particular reasons therefor being pointed out, all of which are present in the case before us, with others of an influential character. Then the way was open for the establishment here of precedent facts to the enforcibility of the stockholder's superadded obligation. No judgment, even in form, had been rendered in the Minnesota court, binding upon persons not parties to the litigation,—none which, in terms or by any statute, created an obligation for its recognition in the courts of this state under the "good faith and credit" clause of the federal constitution, as regards the force to be given to a judgment rendered in the court of one state in the courts of another. It was held here and affirmed by the federal court, that such clause cannot be successfully invoked to bar a resident of this state, who is a stockholder of a Minnesota corporation, the affairs of which are in process of settlement in an administration suit for the benefit of its credors in a Minnesota court, to which he is not a party, from litigating in the courts of this state all questions respecting the enforcibility of his extraordinary stockholder's liability where it is sought in such courts to recover thereon by the representative of the creditors appointed by the home court; that such a stockholder is not a party to the original suit as to such extraordinary liability merely because the corpora-

tion is, since such liability is in no sense an asset of the corporation. Now we face a Minnesota legislative enactment to the effect that the court in such original suit may, in a summary proceeding to which such a stockholder is not a party, fix the amount for which he must respond upon such extraordinary liability, and the time when and the person to whom the same must be paid, and that the determination shall be regarded as a bar to every defense to such liability in any court anywhere. It is hard to conceive of anything more drastic than that. The literal effect thereof is to make the Wisconsin court in this case a mere instrument to execute the commands of a foreign court against one of its citizens in a proceeding to which he was not a party and may not even have had notice of. It is useless to discuss such an unreasonable proposition as that a mere legislative enactment of a state has such extraterritorial force that it can so supplement the authority of its courts as to make their judgments and orders as to persons over which they have no jurisdiction and who reside in another state, binding upon such persons in the courts of such other state, when otherwise they would not be.

It is conceded that the analysis made here in *Finney v. Guy,* of the judicial situation in Minnesota, after the decision in *Hanson v. Davison,* 73 Minn. 454, 76 N. W. 254, was fully sustained by the federal supreme court; but it is said that *Hale v. Allinson,* 188 U. S. 56, 23 Sup. Ct. 244, where the court spoke most decidedly on the subject, does not govern because of the enactment above mentioned.   As evidence thereof it is pointed out that, while the federal supreme court in *Hale v. Allinson* allowed a writ of *certiorari* to the circuit court of appeals of Pennsylvania and sustained the latter in holding that a Minnesota receiver could not, in a court outside its boundaries, enforce the superadded liability of stockholders, the Minnesota law of 1899 not being involved,—in *Burget v. Robinson,* 123 Fed. 262, decided in the circuit court of appeals for the district of Massachusetts, precisely

the same kind of a case, where such law was involved, a writ applied for to review a judgment of the court of appeals of Massachusetts where the receiver's suit was successfully entertained, was refused. The difficulty with that is this: *Hale v. Allinson* went on the ground that a Minnesota receiver, as the mere arm of the court, unaided by legislative authority, has no title to the claims of creditors of a corporation against its stockholders on account of the latter's extraordinary liability, and therefore cannot sue in a foreign jurisdiction to enforce the same. Having thus effectually disposed of the case, the court proceeded to consider whether a receiver should be permitted to pursue a foreign stockholder in the manner attempted, even if he possessed title to the claim against the latter, on the ground of its preventing a multiplicity of suits, and held to the contrary because no such prevention could thereby be accomplished, all parties concerned not being before the court; that the judgment of the Minnesota court was not binding upon the foreign stockholder as to any question concerning his extraordinary liability, because he was not a party to the litigation in such court; that the rule that a stockholder of a corporation is bound by a judgment against it, as in such cases as *Parker v. Stoughton M. Co.* 91 Wis. 174, 64 N. W. 751, does not apply to proceedings to enforce such extraordinary liability, the latter not being an asset of the corporation; that the suit in a foreign court to enforce the same pursuant to the judgment of the home court is not, properly speaking, ancillary to the main suit, an order or judgment in the latter not being binding upon the foreign stockholder as to such liability who is not a party thereto. Thus it will be seen that the law of comity was not there involved. The real defect in the cause of action was in that the receiver had no title to the liability sought to be enforced. That having been changed by the Minnesota law of 1899 prior to *Burget v. Robinson, supra,* the federal supreme court refused to interfere with the decision of. the circuit court of

appeals of Massachusetts in that case, entertaining the re-
ceiver's suit against the foreign stockholder. This court, in
*Finney v. Guy,* 106 Wis. 256, 82 N. W. 595, did not ground
its decision on the fact that the receiver did not possess a suffi-
cient title to the claim sought to be enforced to entitle him to
the remedy invoked. If it had, the new law of Minnesota
might well be said to present a new question. The decision
here was grounded on the idea that it is contrary to the policy
of our laws to allow our citizens to be pursued in the manner
there proposed, and that to permit our courts to be used as
desired would inflict injustice upon our people, the protec-
tion of whom is the primary duty of such courts. As above
indicated, the federal supreme court held this court to be su-
preme in its own jurisdiction in that field. The new situa-
tion, if one is created by the law of 1899, adds force to what
was formerly said as regards the law of comity, liberally ap-
plied, not requiring the use of Wisconsin judicial facilities
in the manner proposed.

A comparison of the complaint in *Finney v. Guy* with that
before us shows very clearly that no claim is made in the lat-
ter not insisted upon in the former. While the law of 1899
is pleaded in the one and not in the other, in both the plea is
made that, by the construction put upon the law of Minne-
sota and by its judicial policy independently of the new leg-
islation, an ancillary action will lie against a stockholder not
brought into the main action by service of process on him, to
enforce his extraordinary liability, in which second action
the determination in the main suit as to the necessity to en-
force such liability, and the extent thereof, is deemed bind-
ing upon the theory that the corporation defendant in
such main suit stands therein for absent stockholders. The
act of the legislature under consideration is grounded wholly
on that doctrine. Of course, such an enactment can have no
greater extraterritorial force than the judgment of a court
as to a person over whom it has no jurisdiction. That the

purpose of the law of 1899 was merely to accomplish, by a somewhat different way, what was held to be within the power of the courts of Minnesota to accomplish before, to merely change the procedure for the enforcement of the extraordinary liability of corporate stockholders within the lines theretofore set by the judicial policy of the state and the construction of existing statutes, not giving any new right, strictly so called, or varying any old one, is plainly declared in *Straw & E. Mfg. Co. v. Kilbourne B. & S. Co.* 80 Minn. 125, 83 N. W. 36. It is there said, in effect, that the new law is a mere remedial measure. Obviously, such a measure adopted in one state can add nothing to nor take anything from a right as regards the use of the judicial instrumentalities of another state to enforce it.

*By the Court.*—The order is affirmed.

DODGE, J., dissents.